JOHN M. ESTES, JR. AND ELAINE G. ESTES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estes v. Commissioner
Docket No. 20238-90
United States Tax Court
T.C. Memo 1992-531; 1992 Tax Ct. Memo LEXIS 537; 64 T.C.M. (CCH) 705; September 8, 1992, Filed *537 Decision will be entered under Rule 155. For Petitioners: Mark R. Schuling. For Respondent: Jeffrey A. Schlei. SHIELDS
SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In a deficiency notice dated July 3, 1990, respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661(a)
1982
$ 19,799
$ 989.95
[1]
$ 4,950
1983
9,390
469.50
[1]
2,347
1984
15,962
798.10
[1]
3,991
Unless otherwise specified, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the only issues remaining for decision are whether petitioners are liable for additions to tax under section 6653(a)(1) and (2) for negligence *538 or intentional disregard of rules and regulations, and for additions to tax under section 6661(a) for substantial understatements. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioners resided in Des Moines, Iowa, when they filed their petition in this case. For 1982, 1983, and 1984 they filed joint income tax returns with the Internal Revenue Service Center, Kansas City, Missouri. Since prior to 1982, petitioners have owned Estes and Son Funeral Home, which provides funeral services in Des Moines, Iowa. The business was founded by Mr. Estes' father in 1939. Mr. Estes, who is sometimes referred to hereinafter as petitioner, started working for his father in 1952 and has been the manager of the funeral home since 1972. Prior to taking over the operation of the funeral home, he attended the University of Iowa for 2 years and embalming school for 1 year. During 1982, 1983, and 1984, Mr. Estes was the only full-time employee of the funeral home but he had seven to ten part-time employees. The business handles between 95 and 125 funerals per year, about two-thirds *539 of which are paid for by individuals and the other one-third by the State, county, or Veterans' Administration. Petitioner does not keep at the funeral home an inventory of caskets, vaults, and other funeral supplies. Instead, he maintains books containing photographs of various caskets, vaults, and other supplies from which a customer selects the desired items. Petitioner then orders the items from supply companies. Petitioners' income tax returns for 1981 and earlier years were prepared by C.G. Williams, a local preparer. Petitioners have never prepared their own returns. Prior to 1982, Mr. Estes used a manual accounting system to keep track of the funeral home's income and expenses. However, in 1982, Mr. Estes met Duane Johnson, who claimed to be a computer consultant and who suggested that Mr. Estes purchase a computer and an accounting package for use in recording the funeral home's income and expenses. Mr. Johnson had previously been employed as some kind of technician by a telephone company, a keypunch operator by the Air Force, a quality control analyst by General Motors, a production manager for a General Motors parts supplier, and a broker or salesman for an insurance *540 company. While he was with the insurance company, Mr. Johnson allegedly attended and received some kind of degree from a Bible college. He then moved to Des Moines where he was employed as a pastor, but to earn extra money he also worked in a computer store, where he had gained some knowledge of computers. During their first meeting, which was arranged by Mr. Johnson, Mr. Estes decided not to purchase a computer. Instead, he retained Mr. Johnson at $ 100 per month to do the bookkeeping for the funeral home with Mr. Johnson's computer. Mr. Johnson later agreed to include the preparation of petitioners' Federal income tax returns in the work to be done for the monthly fee of $ 100. After their first meeting, Mr. Johnson with Mr. Estes' assistance assigned and placed in Mr. Johnson's computer account numbers for each item of income and expense of the funeral home. Thereafter Mr. Johnson, using the funeral home's checkbook as a source document, collated the funeral home's items of income and expense and furnished Mr. Estes with computer-generated monthly reports of the funeral home's income and expenses. Although the reports were not always timely, Mr. Johnson did transmit to *541 Mr. Estes a separate report for each month as it became available. When received, Mr. Estes reviewed each report and upon being advised of any mistake, Mr. Johnson would submit a corrected report. Mr. Johnson prepared petitioners' Federal income tax returns for 1982, 1983, and 1984 from the monthly reports. Each return included a Schedule C on which the income and expenses of the funeral home were purportedly reported. The parties agree that on all three returns the deductions for cost of goods sold were overstated in the respective amounts of $ 25,740, $ 25,740, and $ 39,584. It is also agreed that the overstatement of cost of goods sold for each year is represented by the amount of the beginning inventory shown on the return for that year, because as indicated above, no inventories were maintained by Mr. Estes in the operation of the funeral home. However, in spite of the absence of inventories, as clearly reflectd by petitioners' 1981 return, for some unexplained reason the Schedules C to petitioners' 1982, 1983, and 1984 returns reflect beginning inventories in the respective amounts of $ 25,740, $ 25,740, and $ 39,584. The overstatements of the beginning inventories for *542 1982, 1983, and 1984 and the resultant overstatements in the deductions for costs of goods sold are the principal reasons for the deficiencies determined by respondent. Petitioners' returns for 1982, 1983, and 1984 were signed by Mr. Johnson as the preparer. After its preparation, each return was delivered by Mr. Johnson to petitioners. Both petitioners reviewed, executed, and then filed each return with respondent. Respondent concedes that on their 1982, 1983, and 1984 returns petitioners were entitled to, but failed to claim, deductions for depreciation in the respective amounts of $ 2,947, $ 2,947, and $ 2,334. For the same years, respondent also concedes that they were entitled to, and failed to claim, two-earner deductions in the respective amounts of $ 1,500, $ 1,141, and $ 2,714. The returns for 1982, 1983, and 1984 were audited by respondent and in the deficiency notice respondent determined deficiencies in petitioners' income taxes as a result of the following adjustments to petitioners' taxable incomes: Taxable Year
1982
1983
1984
Cost of goods sold
$ 25,740 $ 25,740 $ 39,584 Depreciation expense
(2,947)
(2,947)
(2,334)
Sundries expense
7,661 ---  ---  Other expense (Sch. C)
7,958 ---  ---  Two-earner deduction
(1,500)
(1,141)
(2,714)
Net adjustments
36,912 21,652 34,536 *543 Respondent also determined that petitioners are liable for additions to tax under section 6653(a)(1) and (2) for negligence or the intentional disregard of rules and regulations, and the addition to tax for substantial understatements under section 6661(a). Upon receipt of the deficiency notice, petitioners timely filed a petition with this Court for a redetermination of all of respondent's determined deficiencies and additions to tax. However, after respondent's answer was filed, petitioners conceded respondent's determination of the deficiency in each of the 3 years, but refused to concede that they are liable for the additions to tax for negligence under section 6653(a)(1) and (2), and the addition for substantial understatements under section 6661(a). Bookkeeping and the preparation of income tax returns during the years under consideration was not the source of significant income to Mr. Johnson. His experience as an income tax return preparer consisted of an H & R Block tax course and the preparation of a few tax returns, including those of his parents. Mrs. Estes has never been employed by the funeral home. She received a master's degree in library science from the University *544 of Illinois in 1960 and has been employed full time as a librarian by the city of Des Moines since her graduation. She has been the director of Des Moines' public libraries since 1979. In her employment, she frequently works with budgets and is familiar with computers. At trial, both petitioners testified and were observed by the Court to be mature, articulate, and reasonably well-educated individuals who are generally familiar with business and business practice especially in their respective fields of employment. OPINION 1. Additions to Tax Under Section 6653(a)(1) and (2)
Section 6653(a)(1) provides that if any part of any underpayment of tax is due to negligence or intentional disregard of rules and regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2) provides for an addition to tax in the amount of 50 percent of the interest payable on that portion of any underpayment of tax which is attributable to negligence. Negligence as used in section 6653(a) is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . *545 Respondent's determination that petitioners' underpayment was due to negligence is presumptively correct and petitioners have the burden of proof on the issue. Rule 142(a); , affg. ; ; . As set forth in our findings, the principal reason for the deficiencies determined by respondent is the overstatement of the beginning inventory for each year. Petitioners contend that under the circumstances they were not responsible for the errors made in the reporting of inventories because they reasonably relied in good faith on the advice of their tax return preparer, Mr. Johnson, and consequently they are not liable for the additions to tax for negligence. As a general rule, the responsibility of filing an accurate return cannot be shifted by the taxpayer to a return preparer. . However, under certain circumstances good faith reliance by the taxpayer on the advice of a competent *546 adviser can be a defense to the addition to tax for negligence. See, e.g., , affd. without published opinion , affd. without published opinion sub nom. ; , affd. ; ; ; see also . In order to avoid the additions to tax for negligence under section 6653(a), the taxpayer must at the least establish: (1) That he provided the return preparer with complete and accurate information; (2) that an incorrect return was the result of the preparer's mistakes; and (3) that the taxpayer believed in good faith that he was relying on the advice of a competent return preparer. See , affd. ; *547 ; , affd. ; . From the record as a whole, we cannot conclude that petitioners provided complete and accurate information to Mr. Johnson or that the errors in their returns are attributable to him. At trial, Mr. Estes and Mr. Johnson each testified that the other was responsible for the erroneous inventory figures. However, as we have noted on other similar occasions, the self-serving testimony of a petitioner is not sufficient to carry his burden of proof especially where there is other evidence to the contrary. See ; see also , affg. . Furthermore, the record clearly establishes that Mr. Estes has worked in the funeral home since 1952 and managed it since 1972. In addition Mrs. Estes is not only well educated but has also been employed for many years in a responsible *548 professional position in which she deals with computers and budgets. The returns were prepared from the monthly statements generated by Mr. Johnson's computer. Consequently the source of the information in the statements, and hence the source of the information appearing on the returns, was the checkbook of the funeral home. Since the checkbook contained no reference to inventories, no inventory figures were inserted in the computer or included in the monthly statements prepared by Mr. Johnson. Under these circumstances, the most logical source of the inventory figures used on the tax returns was Mr. Estes since he had operated the business for years and was thoroughly familiar with its details. In any event, under these circumstances, we cannot find that with their education and experience petitioners received, examined, and signed the returns in question without realizing the error in the inventories. Moreover, from our observation of both petitioners and Mr. Johnson at trial, we are also unable to conclude that with their education and business experience petitioners could have reasonably relied upon Mr. Johnson to prepare accurate income tax returns. Prior to his employment *549 by Mr. Estes, Mr. Johnson had no experience in bookkeeping or the preparation of income tax returns other than a few returns for his parents, and the record contains no evidence to support a finding that he led petitioners to believe otherwise. Therefore, we are convinced that petitioners could not have reasonably believed that Mr. Johnson was a competent preparer of income tax returns. See ; . In sum, petitioners have failed to establish that they acted reasonably in reporting the items that resulted in the deficiencies determined by respondent. Consequently, we conclude that the additions to tax under section 6653(a)(1) and (2) are applicable. 2. Addition to Tax Under Section 6661(a)
Section 6661(a) imposes an addition of 25 percent of any underpayment attributable to a substantial understatement. An understatement is substantial if it exceeds the greater of 10 percent of the amount required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). In determining the size of an understatement, the amount is reduced by the following: (1) The *550 portion of the understatement attributable to the tax treatment of an item for which there is or was substantial authority; and (2) the portion of the understatement for which the relevant facts affecting its tax treatment were adequately disclosed on the return or in a statement attached to the return. Sec. 6661(b)(2)(B). Finally, respondent has discretion to waive all or a part of the addition upon a showing by the taxpayer that there was reasonable cause for the understatement and that the taxpayer acted in good faith. Sec. 6661(c). Petitioners do not claim that there was substantial authority for the improper manner in which they computed the cost of goods sold or that the relevant facts were adequately disclosed on their returns. Instead, they contend that respondent should have waived the addition under the authority provided by section 6661(c). On brief respondent first contends that petitioners did not request a waiver and therefore such relief is not applicable in this case. However, throughout the course of this litigation petitioners have attempted to establish that they acted reasonably and in good faith in the preparation of their returns. Consequently, we are *551 convinced that petitioners did request a waiver of the addition to tax under section 6661(a) and that we need to review respondent's refusal of their request for relief under section 6661(c) in order to ascertain whether such refusal constituted an abuse of discretion. . Petitioners have the burden of proof on this issue. Rule 142(a); . Petitioners testified that they have never prepared their own returns, that Mr. Johnson had successfully computerized their business records, and that they relied on him to accurately prepare their returns. However, as found above, petitioners, who are well educated and experienced in business and financial matters, were negligent, at least in the review of their returns. As a result, petitioners have failed to carry their burden of proving that they acted in good faith in the preparation of their returns and that there was reasonable cause for the understatement in their tax or that there was an abuse of discretion by respondent in refusing to waive the addition to tax under section 6661. Decision will be entered *552 under Rule 155. Footnotes
1. 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules and regulations.↩